```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
```

UNITED STATES OF AMERICA,

    -against-

JERMAINE JOHNSON,

              Defendant.

**MEMORANDUM & ORDER**

**04-CR-171-5 (NGG)**

```
----------------------------------------------------------------X
```
NICHOLAS G. GARAUFIS, United States District Judge.

On December 2, 2004, Defendant Jermaine Johnson pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (Dec. 2, 2004, Tr. (Dkt. 199); see also J. (Dkt. 239).) The court sentenced Defendant to a term of imprisonment of 120 months, followed by a term of supervised release of five years. (J.) On May 8, 2013, Defendant was released from prison and his term of supervision commenced. (Sept. 19, 2013, Order (Dkt. 556).) To date, Defendant has completed almost three years of his five-year supervised release term. Acting pro se, Defendant now moves for an early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1). (Def.'s Mot. to Terminate Supervised Release ("Def.'s Mot.") (Dkt. 597).) The Government opposes Defendant's motion. (Gov't's Opp'n to Def.'s Mot. ("Gov't's Opp'n") (Dkt. 599).) For the reasons set forth below, Defendant's motion is DENIED.

**I.    LEGAL STANDARD**

Pursuant to 18 U.S.C. § 3583(e)(1), a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Before doing so, the court must first

1

consider, if applicable: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to deter criminal conduct; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with correctional treatment; (5) the kinds of sentence and the sentencing range established for defendants with similar characteristics under the applicable United States Sentencing Guidelines and policy statements; (6) any pertinent policy statement of the U.S. Sentencing Commission in effect on the date of sentencing; (7) the need to avoid unwarranted sentence disparities among similar defendants; and (8) the need to provide restitution. Id. § 3583(e) (referencing factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), (a)(7)).

Early termination of supervised release, however, is meant to "account for new or unforeseen circumstances" that arose subsequent to the imposition of the original sentence. United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997); see also United States v. Bouchareb, 76 F. Supp. 3d 478, 479 (S.D.N.Y. 2014). Steadfast compliance with the terms of supervised release alone is insufficient to justify an early discharge. Bouchareb, 76 F. Supp. 3d at 479; United States v. Berrios, No. 95-CR-84 (PKL), 2010 WL 1010022, at *2 (S.D.N.Y. Mar. 16, 2010) ("Motions for early termination of supervised release should not be granted as a matter of course because '[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person.'" (quoting United States v. McKay, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005))). There must be some showing of changed circumstances—such as "exceptionally good behavior"—that render the prior sentence "either too harsh or inappropriately tailored to serve the general punishment goals." Lussier, 104 F.3d at 36; see also McKay, 352 F. Supp. 2d at 361.

## II. APPLICATION

Defendant argues that the court should terminate the remainder of his supervised release because he has "never been convicted of any crime" since his release from prison and he has made concerted efforts to integrate back into his community. (See Def.'s Mot. at 1.) He has "completed 2 drug programs," "had several jobs since being home," attended commercial driver's license school, and enrolled in the "New York City District council of carpenters apprent[ice]ship program" where he earned multiple certificates. (Id.) Defendant is currently employed by the United Hoisting and Scaffolding Corp. (Id.) Defendant believes he should be released from supervision so that he can "mov[e] on with [his] life and leav[e] the past where it stands." (Id.)

The Government opposes the request, pointing out that, while on supervision, Defendant was arrested once and was discharged from a residential re-entry center due to multiple rule infractions. (Gov't's Opp'n; see also Sept. 19, 2013, Order (Dkt. 556); Oct. 17, 2014, Order (Dkt. 578).) Several months after his release from prison, Defendant, along with a relative and co-defendant in this action, was arrested for criminal mischief in the third degree due to a dispute involving a non-party relative. (Sept. 19, 2013, Order.) As a result, Defendant consented to an alteration of the conditions of his supervised release to include a three-month stay in a residential re-entry center. (Id.) Defendant entered the program on November 1, 2013, but before completion, on January 17, 2014, he was "discharged as a program failure as result of several low-level infractions." (Oct. 17, 2014, Order.) These infractions include missing curfew on a number of occasions, but each time by no more than seventeen minutes. (Id.) Aside from these instances, the Probation Department has found that Defendant was "extremely cooperative with staff" at his out-patient substance abuse treatment sessions, and that he "has utilized these

3

sessions well." (Id.) It does not appear Defendant has had any issues since January 2014, and the Government acknowledges that "defendant is working to turn his life around and that the supervision imposed by the Court is working." (Gov't's Opp'n at 3.) The Government also notes that the Probation Department does not oppose Defendant's request for an early discharge from supervision. (Id. at 1-2.) Nonetheless, the Government argues the circumstances here do not warrant granting Defendant's motion. (Id.)

After considering the relevant factors under 18 U.S.C. § 3583(e) and reviewing Defendant's conduct during supervision, the court concludes that supervised release should not be terminated at this time. While the court is encouraged by Defendant's progress since his release from prison, especially the incident-free two-plus years since January 2014, Defendant has not demonstrated such "exceptionally good behavior" that would justify an early discontinuance of supervised release. Lussier, 104 F.3d at 36. Even "faithful compliance with the terms of his supervision does not, by itself, entitle [Defendant] to modification or termination of his term of supervised release." United States v. Flores, No. 99-CR-1110 (RWS), 2010 WL 2573385, at *1 (S.D.N.Y. June 28, 2010). Since his release from incarceration, Defendant was arrested for criminal mischief due to an incident involving a relative, and he was discharged from a residential re-entry center as a program failure for minor infractions such as missing curfew by a few minutes on several occasions. Although even the Government characterizes "these infractions [as] relatively minor," the fact remains that Defendant's record on supervision has been less than flawless. (Gov't's Opp'n at 3.)

The court also agrees with the Government that supervision appears to be working for Defendant after some initial turbulence, and that the structure of the supervision is helping "eas[e] the defendant's transition from prison life to community life." United States v.

Balogun, 146 F.3d 141, 146 (2d Cir. 1998); see also U.S. Sentencing Guidelines Manual Ch. 7 pt. A.4 (U.S. Sentencing Comm'n 2014) ("[S]upervised release should focus on the integration . . . into the community, while providing the supervision designed to limit further criminal conduct."). Nor has Defendant demonstrated any other kind of "changed circumstances" that would justify an early discharge. See, e.g., United States v. Bastien, 111 F. Supp. 3d 315, 322 (E.D.N.Y. 2015) (suggesting early termination may be justified where supervision threatens defendant's job advancement or other employment opportunities); United States v. Jimenez, No. 99-CR-1110 (RWS), 2012 WL 3854785, at *1 (S.D.N.Y. Sept. 5, 2012) (considering defendant's medical issues, including partial paralysis due to a stroke). Defendant's case does not present any "new or unforeseen circumstances" that would pose as an obstacle to completion of supervision, much less render supervision "either too harsh or inappropriately tailored to serve general punishment goals." Berrios, 2010 WL 1010022, at *2 (citation and internal quotation marks omitted). Without doubt, Defendant's compliance with the terms of his supervised release, the efforts he has undertaken to integrate back into his community, and his sincere desire to move on with his life, are laudable. However, they are simply insufficient to warrant an early termination of Defendant's prescribed sentence. See, e.g., Bastien, 111 F. Supp. 3d at 322; Berrios, 2010 WL 1010022, at *2; McKay, 352 F. Supp. 2d at 361.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for early termination of his term of supervised release is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
April 2⁷, 2016

NICHOLAS G. GARAUFIS
United States District Judge

5